IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY SIKO, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 23-1184 |
| | ) |
| v. | ) District Judge W. Scott Hardy |
| | ) Magistrate Judge Maureen P. Kelly |
| ASTRAZENECA PHARMACEUTICALS LP, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER OF COURT**

This employment discrimination action comes before the Court on Plaintiff Tammy Siko's objections (Docket No. 35) to the Report and Recommendation (Docket No. 33) ("R&R") entered by Magistrate Judge Maureen P. Kelly on April 2, 2024. The R&R recommends that the Partial Motion to Dismiss the Amended Complaint (Docket No. 20), filed by Defendant AstraZeneca Pharmaceuticals LP, be granted, that Counts II and III be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and that Plaintiff be given leave to file a second amended complaint to correct the identified pleading deficiencies as to the two claims addressed therein. (Docket No. 33 at 1, 12). Service of the R&R was made on the parties through the Court's CM/ECF system, and the parties were advised that any objections to same were due by April 16, 2024. (Docket No. 33 at 12 and docket text entry). On April 16, 2024, Plaintiff filed her objections to the R&R. (Docket No. 34, re-docketed at Docket No. 35). On April 30, 2024, Defendant filed its response in opposition to Plaintiff's objections. (Docket No. 36). On July 10, 2024, Defendant filed a Notice of Supplemental Authority in support of its motion. (Docket No. 37).

1

I.      **Background**

In the Amended Complaint, Plaintiff alleges that she is a Christian over the age of 40 who worked for Defendant as a field-based sales specialist. (Docket Nos. 19, ¶¶ 7, 18; 35 at 1). According to the Amended Complaint, Defendant subjected Plaintiff to discriminatory treatment at work and terminated her employment because she did not comply with Defendant's policy requiring its employees to be vaccinated against COVID-19, a requirement for which she was denied a religious exemption. (Docket No. 35 at 2-3). Plaintiff alleges three claims against Defendant: Count I, religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); Count II, disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"); and Count III, age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"). (Docket No. 19 at 6-11). Defendant, in its motion to dismiss, seeks dismissal of only Count II – ADA and Count III – ADEA.

In her objections to the R&R, Plaintiff opposes Judge Kelly's recommendation that Defendant's Partial Motion to Dismiss the Amended Complaint be granted and that Plaintiff's claims under both the ADA and the ADEA be dismissed. (Docket No. 35). With regard to her ADA claim, Plaintiff argues that she has averred facts in the Amended Complaint that plausibly give rise to an entitlement to relief for a "regarded as" claim under the ADA, and that Judge Kelly erred in making a recommendation to the contrary. (*Id.* at 4). In her objections, Plaintiff asserts that she, who was not vaccinated against COVID-19, was physically different from Defendant's employees who had received the COVID-19 vaccine, and that Defendant, albeit mistakenly, perceived that physical difference as suffering from a "physical impairment" of "being immunocompromised, *i.e.*, either having COVID-19 and/or having substantially greater

susceptibility to contracting COVID-19 and passing it on to others." (*Id.* at 6). In response to Plaintiff's objections, Defendant argues that Plaintiff is asserting for the first time in her objections that Defendant perceived her as being immunocompromised, and that there are no plausible factual allegations in the Amended Complaint to support such averment. (Docket No. 36 at 5 n.1). Defendant also asserts that "[p]erceiving an individual as at risk for a future disability does not fall within the scope of an ADA regarded as claim because the ADA does not prohibit discrimination based on future impairments." (*Id.* at 7). Defendant further notes that impairments that are transitory and minor are excluded from the "regarded as" disabled definition, so to the extent Plaintiff alleges that Defendant erroneously regarded her as having contracted COVID-19 after one particular meeting referenced in the Amended Complaint, that claim fails as well. (*Id.* at 8).

As to her ADEA claim, Plaintiff challenges Judge Kelly's recommendation that Plaintiff has not plausibly alleged an entitlement to relief under that statute. (Docket No. 35 at 8). In support of her ADEA claim, Plaintiff alleges that a high-ranking executive of Defendant made a statement during a presentation to the company's sales managers that the company should aim to hire individuals who are close to 29 years of age, and that Defendant's mandatory vaccine policy was later enacted, in part, to remove employees over the age of 40. (*Id.*). Plaintiff argues that it can be reasonably inferred that Defendant's employees would view the executive's statement – which reflects discriminatory animus and cannot be fairly characterized as a "stray remark" – as a company policy to be followed, and that the two-month period of time between that statement and the enactment of the vaccination policy is sufficiently suggestive of causation here. (*Id.* at 9-10). In response to Plaintiff's objections, Defendant argues that Plaintiff has merely pled barebones allegations that were properly rejected in the R&R, as Plaintiff only repeats in her objections the conclusory allegation that a statistically significant portion of unvaccinated employees who were

3

denied religions exemptions to the vaccination policy were field-based sales employees over the age of 40 (like Plaintiff). (Docket No. 36 at 9). Defendant also argues that the executive's stray remark is, as pled, completely untethered from Defendant's decision to termination Plaintiff for failure to comply with the company's vaccine requirement. (*Id.*). Defendant asserts that Plaintiff's allegations do not establish that her termination occurred under circumstances creating an inference that her age was a motivating factor, and that the Court should adopt Judge Kelly's recommendation that Plaintiff's ADEA claim be dismissed. (*Id.* at 10).

## II. Discussion

The Federal Rules of Civil Procedure provide that a party may file specific written objections to the proposed findings and recommendations of a magistrate judge, and a district judge must conduct a *de novo* review of any part of the R&R that has been properly objected to. *See* Fed. R. Civ. P. 72(b)(2), (b)(3); 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the recommended disposition, as well as receive further evidence or return the matter to the magistrate judge with instructions. *See id.* Upon careful *de novo* review of the R&R and the entire record, including Defendant's Partial Motion to Dismiss the Amended Complaint and supporting materials, and Plaintiff's response thereto, the Court concludes that, despite Plaintiff's arguments to the contrary, Plaintiff's objections do not undermine the R&R's recommended disposition. Accordingly, the Court will adopt the R&R as the Opinion of the Court, as modified, *infra*, grant Defendant's Partial Motion to Dismiss, and dismiss Counts II and III of the Amended Complaint without prejudice.

### A. ADA "Regarded As" Claim

Plaintiff alleges that Defendant regarded her as disabled due to her unvaccinated status and treated her as if she were infected by COVID-19 even when she was asymptomatic and despite

4

her natural immunity, and/or that Defendant regarded her as being substantially more susceptible to becoming infected by COVID-19 and then infecting others than those who did receive COVID-19 vaccinations. (Docket No. 19, ¶¶ 42-53). Plaintiff further alleges that Defendant established a systematic policy of disability-based discrimination by regarding its unvaccinated employees such as Plaintiff as disabled, by treating her less favorably, and by ultimately terminating her employment because she was not vaccinated. (*Id.*).

In concluding that Plaintiff's Amended Complaint fails to aver a plausible claim that Defendant regarded her as disabled, the R&R relies, in large part, on several district court decisions cited by Defendant for the proposition that one's choice to remain unvaccinated is not an impairment and therefore cannot support an ADA "regarded as" claim as a matter of law.[1] (Docket No. 33 at 6-7). Defendant goes so far as to characterize these cases as "black-letter law." (Docket No. 21 at 11-13). That characterization, however, is not correct. Indeed, the Third Circuit has yet to decide this issue, so these opinions must be evaluated for their persuasive worth. While this Court agrees with Judge Kelly that Plaintiff has not adequately pled a "regarded as" disability claim at this juncture, that conclusion can be reached without applying the reasoning of these opinions, which this Court finds unavailing.

Plaintiff's ADA claim contends that Defendant unlawfully regarded her as being disabled. *See* 42 U.S.C. §§ 12102(1)(C), (3) (defining the "regarded as" variant of an individual with a

---

[1] *See Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023), *motion for relief from judgment denied*, 2023 WL 3159233 (E.D.N.Y. Apr. 28, 2023); *Friend v. AstraZeneca Pharms. LP*, Civ. No. 22-03308, 2023 WL 3390820, at *4 (D. Md. May 11, 2023); *Doe(s) v. Pittsburgh Reg'l Transit*, 684 F. Supp. 3d 417, 428 (W.D. Pa. 2023); *Speaks v. Health Sys. Mgmt., Inc.*, Civ. Action No. 5:22-CV-00077, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022); *Chancey v. BASF Corp.*, No. 3:22-cv-34, 2022 WL 18438375, at *3 (S.D. Tex. Dec. 29, 2022), *aff'd sub nom. Chancey v. BASF*, No. 23-40032, 2023 WL 6598065 (5th Cir. Oct. 10, 2023); *see also* Memorandum of Law in Support of Defendant's Partial Motion to Dismiss the Amended Complaint (Docket No. 21 at 11-13 (citing cases)); Reply Memorandum of Law in Further Support of Defendant's Partial Motion to Dismiss the Amended Complaint (Docket No. 27 at 4-5 (citing cases)); and Defendant's Response in Opposition to Plaintiff's Objections to the R&R (Docket No. 36 at 6-8 (citing cases)).

disability). The cases advanced by Defendant in support of its motion to dismiss this claim reject similar "regarded as" claims because the plaintiffs in those cases, like Plaintiff here, each made a personal choice not to become vaccinated for COVID-19, and those courts reasoned that such personal choice does not constitute an ADA-covered impairment. Yet, there is nothing in the text of the ADA to support that rationale.

The ADA defines an individual with an *actual* disability,[2] pursuant to 42 U.S.C. § 12102(1)(A), as one who has "a physical or mental impairment[3] that substantially limits one or

---

[2] The Supreme Court previously noted that no agency "has been given authority to issue regulations implementing the generally applicable provisions of the ADA . . . . Most notably, no agency has been delegated authority to interpret the term 'disability.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479 (1999). Nonetheless, the United States Equal Employment Opportunity Commission (the "EEOC") had issued guidance for interpreting the term "disability" by supplying definitions for: "(1) 'physical or mental impairment,' (2) 'substantially limits,' and (3) 'major life activities.'" *Id. (citing* 29 C.F.R. § 1630.2(h)–(j)(1998)). Congress subsequently enacted the ADA Amendments Act of 2008, Pub. L. 110–325, 122 Stat. 3553 (2008), which, among other things, defines the terms "disability" and "major life activities" and supplies related rules of construction. Those amendments are codified at 42 U.S.C. § 12102. As one court stated, the ADA was amended to specifically address certain impairments, including HIV-AIDS, that were not receiving the protection that Congress initially intended. *See Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 133 (E.D. Pa. 2020) (citing *Koller v. Riley Riper Hollin & Calagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012)); *see also Morgan v. Allison Crane & Rigging LLC*, No. 23-1747, 2024 WL 4033125, at *1 (3d Cir. Sept. 4, 2024) (the Third Circuit noting that they were, in part, writing precedentially to clarify that the ADA Amendments expanded the scope of disability coverage under the ADA). Notably, too, Congress instructs that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active," "an impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability," and "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as – (I) medication . . . ." 42 U.S.C. § 12102(4)(A)–(E)(i).

[3] The ADA itself does not expressly define the term "impairment." Accordingly, the Supreme Court instructs that such statutory terms be interpreted "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020). The Merriam-Webster Dictionary defines "impairment" as "diminishment or loss of function or ability." *Impairment*, Merriam-Webster.com, http://merriam-webster.com/dictionary/impairment (last visited Sept. 9, 2024). The Oxford English Dictionary defines "impairment" as "[a] (degree of) physical or mental disability or reduced function." *Impairment*, OED.com, http://oed.com/search/dictionary/?scope=Entries&q=impairment (last visited Sept. 9, 2024). The Webster's New World College Dictionary defines an "impairment" as "a deterioration or weakening." *Impairment*, YourDictionary.com, http://yourdictionary.com/impairment (last visited Sept. 9, 2024). The EEOC has long offered its own definition: "(1) [a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) [a]ny mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(1), (2); *but see Loper Bright Enters. v. Raimondo*, — U.S. —, 144 S. Ct. 2244, 2273, — L. Ed. 2d — (2024) (holding that courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and may not defer to an agency interpretation of the law simply because a statute is ambiguous).

more major life activities[4] of such individual." By contrast, the ADA defines an individual *regarded as* disabled, pursuant to 42 U.S.C. § 12102(1)(C), as one who is "regarded as having such an impairment" if that "individual establishes that he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(C), (3)(A). So, while these statutory definitions incorporate certain identical terms (*e.g.*, physical or mental impairment, major life activities, etc.), they fundamentally differ in that an actual disability pursuant to Section 12102(1)(A) need not be established to satisfy the "regarded as" variant pursuant to Section 12102(1)(C). *See also Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 691 (W.D. Pa. 2014) (stating that a plaintiff who is proceeding under the "regarded as" variant of disability no longer needs to show that the impairment substantially limits a major life activity). Rather, all that the text of the ADA requires to establish that one is "regarded as" disabled is that the employer *perceive* there to be a physical or mental impairment, regardless of whether or not

---

Here, context and syntactical canons (particularly the grammar canon) help interpret this unambiguous statutory provision because Congress expressly states that a disability is defined as an "impairment" that is "physical or mental" (collectively, the complete subject of the sentence) that "substantially limits" (the predicate) "one or more major life activities" (the direct object). *See* 42 U.S.C. § 12102(1)(A). An impairment, then, is understood in relation to one's major bodily functions and other major life activities. *See* 42 U.S.C § 12102(2)(B) ("a major life activity . . . includes the operation of a major bodily function, including but not limited to, functions of the immune system . . . ."). Accordingly, the best reading of this clear and unambiguous statutory text is that an impairment means the diminishment, loss of function or ability, or deterioration or weakening of one or more of a person's major life activities, including operation of a major bodily function. What makes such an impairment an actual disability *per* 42 U.S.C. § 12102(1)(A) is that such impairment "substantially limits" one or more of those major life activities. Congress directs courts to interpret the term "substantially limits" consistent with the findings and purposes of the ADA Amendments Act of 2008. *See* 42 U.S.C. § 12102(4)(B).

[4]  Major life activities are defined by Congress to "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). A major life activity also "includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

the impairment[5] limits or is perceived to limit a major life activity. *See* 42 U.S.C. § 12102(3).[6] It is also noteworthy that Congress directs courts to construe 42 U.S.C. § 12102(1) (defining each variant of disability[7]) "in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by [the ADA's] terms." 42 U.S.C. § 12102(4)(A).

Here, Defendant contends that an impairment within the meaning of the ADA cannot exist if it is caused by a personal choice. However, there is nothing in the express statutory text of the ADA that nullifies the existence of one's impairment if it is caused by his or her personal choices. In fact, there are a myriad of impairments that can be caused either by an individual's personal volition or otherwise, such as by genetics or disease. Examples include an individual who becomes paraplegic after a vehicular collision caused by that person's choice to drive a car recklessly, or when such paralysis is caused by genetics, disease, or, in the case of a vehicular collision, by the negligence of other drivers. A paralyzed person has an impairment either way. Similarly, individuals with diabetes have an endocrine disorder, and thus an impairment, regardless of whether that disorder was caused by genetics, family history, and/or certain lifestyle choices. Other examples abound. An individual's physical or mental condition either constitutes an impairment, or it does not, regardless of how that individual came to be in such condition. If the

---

[5]  For "regarded as" claims, the ADA expressly excludes from the definition of "impairment" those actual or perceived impairments that are "transitory and minor." 42 U.S.C. § 12102(3)(B).

[6]  After passage of the ADA Amendments Act of 2008, the EEOC issued its own interpretive guidance for the term "regarded as" disabled at 29 C.F.R. § 1630.2(g)(1)(iii) and (l): (1) "an individual is 'regarded as having such an impairment' [in accord with 42 U.S.C. § 12102(1)(C)] if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity;" (2) "even if the [employer] asserts, or may or does ultimately establish, a defense to such action;" and (3) "[e]stablishing that an individual is 'regarded as having such an impairment' does not, by itself, establish liability." 29 C.F.R. § 1630.2(l)(1)-(3); *but see Loper Bright Enters.*, 144 S. Ct. at 2273.

[7]  A third statutorily defined variant of "disability" under the ADA, not relevant here, is having "a record of" a disabling impairment. 42 U.S.C. § 12102(1)(B).

8

condition does constitute an impairment, it either substantially limits a major life activity and thus constitutes an actual disability, or it does not. In fact, Congress went so far as to instruct that the determination of whether an impairment substantially limits a major life activity (*i.e.*, constitutes an actual disability) "shall be made without regard to the ameliorative effects of mitigating measures such as – (I) medication." 42 U.S.C. § 12102(4)(E)(i). Any personal choices that may have led to the existence of the putative impairment are irrelevant to that determination.

Considerations of personal choice are even further removed from the ADA's statutory text pertaining to "regarded as" claims, where the key determination is whether the employer took an action "because of" the individual's actual or perceived physical or mental impairment. *See* 42 U.S.C. § 12102(3)(A). Indeed, for such claims the focus is on the employer, not the employee, because the statutory text relates to the perceptions made by the employer (that is, whether the employer regarded the employee as having an impairment) and the employer's motivation for taking the action at issue. Nothing in the text of the ADA would nullify or negate a finding that an individual has an actual or perceived impairment because he or she made a personal choice that caused or contributed to bringing his or her putative impairment into existence.[8]

Directed by this statutory framework, the Court must determine whether Plaintiff's Amended Complaint plausibly avers that Defendant took an action prohibited by the ADA because Plaintiff either had an actual impairment or because Defendant regarded her as having such an impairment. Plaintiff avers that she had not received any COVID-19 vaccinations but "had natural immunity to the COVID-19 virus," that Defendant "misunderstood information about [her]

---

[8] While one's personal choices have no bearing on whether a person has an impairment within the meaning of the ADA even though such personal choices may have caused or contributed to the existence of such impairment, an employer's views of those personal choices, whether such views contributed to its perceptions of an employee's physical or mental condition, and its motivations for taking an employment action against that employee may be highly probative. That issue is not presently before the Court at this motion to dismiss stage.

condition or limitations and, on that basis, concluded that . . . [she] was unable to perform her job," and that her vaccination status "posed a substantial risk of serious harm" to herself or to the health and safety of others, "based on stereotypes, stigma, unwarranted fears, and ignorance." (Docket No. 19, ¶¶ 44, 46, 47, 51). Although Plaintiff also alleges that Defendant regarded her as having a "physical or mental impairment," that allegation merely recites a legal conclusion, and Plaintiff does not sufficiently aver in the Amended Complaint the impairment that Defendant perceived or regarded her as having.[9] (*Id.* ¶ 43). Further, the Court cannot *infer* a perceived impairment from the limited averments Plaintiff actually pled in her Amended Complaint.[10] Consequently, Plaintiff's ADA claim at Count II of her Amended Complaint shall be dismissed without prejudice.

### B. ADEA Claim

The Court also agrees with Judge Kelly's conclusion that Plaintiff's ADEA claim should be dismissed without prejudice. The Court agrees that, setting aside the legal conclusions and conclusory speculations averred in the Complaint, Plaintiff has not raised a reasonable expectation that discovery will reveal evidence of each element of her ADEA claim. (Docket No. 33 at 9-11). The Court also agrees that the timing of Defendant's presentation indicating that the company

---

[9] Not only has Plaintiff failed to plead the existence of a real or perceived impairment, but Plaintiff also fails to plead that such impairment is not minor. When amending the ADA, Congress expressly provided that "regarded as" claims cannot arise from impairments that are transitory (*i.e.*, an impairment with an actual or expected duration of 6 months or less) and minor. 42 U.S.C. § 12102(3)(B). Here, Plaintiff avers that Defendant regarded her as if she were "*perpetually* infected by COVID-19, even when asymptomatic, and/or *perpetually* substantially more susceptible of becoming infected by COVID-19 and then infecting others than those who had COVID-19 vaccination." (Docket No. 19, ¶ 42 (emphasis added)). At this preliminary pleading stage, these averments satisfy the statutory requirement that Plaintiff's perceived impairment not be transitory. Less certain, however, is whether Plaintiff adequately pled that her perceived impairment is not minor. Plaintiff does aver that the COVID-19 pandemic caused Defendant to implement a company-wide vaccination mandate and to impose other requirements such as testing, remote work, and masking. (*Id.* ¶¶ 10, 11, 12, 44, 47). However, in this Court's estimation, such averments, without more, are not sufficient to generate a reasonable inference that the perceived impairment is not minor.

[10] In briefing, Plaintiff argues that Defendant regarded her as having a physiological condition limiting her immune system due to her unvaccinated status and despite her averred natural immunity to COVID-19 (Docket No. 35 at 6-7). However, Plaintiff's brief is not a pleading, and the contents of a brief cannot be relied upon as such.

should be hiring younger employees and its announcement as to its COVID-19 vaccine mandate does not constitute unusually suggestive temporal proximity. (*Id.* at 11). The Court further agrees that stray remarks by an individual not involved in the decision to terminate Plaintiff's employment do not support her claim of age discrimination. (*Id.*). Therefore, Plaintiff's ADEA claim at Count III of her Amended Complaint shall be dismissed without prejudice.

### III. Conclusion

As such, the Court will adopt the R&R as the Opinion of the Court, as modified, *supra*, and will grant Defendant's Partial Motion to Dismiss the Amended Complaint.

An appropriate order follows.

### ORDER OF COURT

AND NOW, this 9th day of September, 2024,

IT IS HEREBY ORDERED that Plaintiff's objections to the Report and Recommendation (Docket No. 35) are OVERRULED, and the Report and Recommendation (Docket No. 33) ("R&R") is ADOPTED as the Opinion of the Court, as MODIFIED, *supra*.

IT IS FURTHER ORDERED that, for the reasons set forth in the R&R as modified, *supra*, Defendant's Partial Motion to Dismiss the Amended Complaint (Docket No. 20) is GRANTED, and Counts II and III are DISMISSED without prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

IT IS FURTHER ORDERED that if Plaintiff wishes to file a second amended complaint, she shall do so by **October 9, 2024**, and such complaint must fully allege every claim she wishes to pursue against all parties and must be a pleading that stands by itself without reference to the original or amended complaint, in which case Defendant shall file a response thereto by **October 23, 2024**. If Plaintiff does not file a second amended complaint by **October 9, 2024**, then Counts

11

II and III of the Amended Complaint will be dismissed with prejudice, and Defendant shall file an answer to the remaining claims in the Amended Complaint by **October 23, 2024**.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf:       All counsel of record